**MANDATE**

0-1021-cv (L)
Food Holdings Ltd. v. Bank of America Corp.

N.Y.S.D. Case # 05-cv-9934(LAK)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to summary orders filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

1  At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel
2  Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 27th day
3  of May, two thousand eleven.
4
5  PRESENT:
6
7      JOSÉ A. CABRANES,
8      REENA RAGGI,
9              *Circuit Judges*,
10     JANE A. RESTANI,
11             *Judge*.*
12
13 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
14
15 FOOD HOLDINGS LIMITED, Cayman Island Company in
16 Liquidation through the Joint Official Liquidators, G. JAMES CLEAVER and
17 GORDON I. MACRAE, DAIRY HOLDINGS LIMITED, Cayman Island Company
18 in Liquidation through the Joint Official Liquidators, G. JAMES CLEAVER and
19 GORDON I. MACRAE,
20
21              *Plaintiffs-Appellants-Cross-Appellees*,
22
23              v.                                              Nos. 10-1021-cv (Lead)
24                                                                   10-1298-cv (XAP)
25
26 BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A.,
27 BANC OF AMERICA SECURITIES, LLC, BANK OF AMERICA "DOES,"
28 #1-20,
29
30              *Defendants-Appellees-Cross-Appellants*.**
31
32 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
33

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 05, 2011

---

* The Honorable Jane A. Restani, for the United States Court of International Trade, sitting by designation.

** The Clerk of Court is directed to amend the official caption of this case to conform to the listing of the parties shown above

1

MANDATE ISSUED ON 08/05/2011

| | |
|---|---|
| **FOR PLAINTIFFS-APPELLANTS-CROSS-APPELLEES**: | J. GREGORY TAYLOR (Allan B. Diamond, Richard I. Janvey, J. Benjamin King, *of counsel*), Diamond McCarthy LLP, New York, NY. |
| **FOR DEFENDANTS-APPELLEES-CROSS-APPELLANTS:** | JOSEPH B. TOMPKINS, JR. (A. Robert Pietrzak, Daniel Allan McLaughlin, Alan C. Geolot, Mark P. Guerrera, Robert D. Keeling, *on the brief*), Sidley Austin LLP, New York, NY amd Washington, D.C. |

Appeal from a February 17, 2010 opinion and a February 18, 2010 judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*).[1]

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

This case springs from a failed structured transaction by which the dairy products conglomerate Parmalat attempted to obtain off-balance sheet debt financing. Plaintiffs are two special purpose entities ("plaintiffs" or "SPEs") created by defendants Bank of America Corporation and affiliated companies (jointly, "defendants" or "BofA"). On November 23, 2005, the SPEs, which are now in liquidation proceedings before the Grand Court of the Cayman Islands, filed claims against defendants for fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, unjust enrichment, civil conspiracy, and declaratory judgment. On February 28, 2007, the District Court granted defendants' motion to dismiss in part and denied the motion as to the remaining claims, including the breach of fiduciary duty claim now before us on appeal.

Between September 14 and September 17, 2009, the District Court held a bench trial on the SPEs' surviving claims. After receiving further post-trial briefing, the District Court issued an opinion on February 17, 2010, as corrected by an order of February 19, 2010, rejecting all of the SPEs' claims. *See In re Parmalat Sec. Litig.*, 684 F. Supp. 2d 453 (S.D.N.Y. 2010). With respect to the claim for breach of fiduciary duty, the District Court held, *inter alia*, (1) that defendants owed the SPEs a fiduciary duty of full disclosure under New York law; (2) that defendants had breached that duty; but (3) that the SPEs' damages were not caused by defendants, because the SPEs would have entered into the transaction regardless of whether the omitted information had been disclosed to them. *Id.* at 478-83.

This appeal, in which the SPEs challenge only the District Court's ruling with respect to their claim for breach of fiduciary duty, followed. *See* Plaintiff's Br. at 28. We assume the parties' familiarity with the remaining factual and procedural history, which is explained with exquisite care by the District Court in its opinion and order of February 17 and 19, 2010. *See In re Parmalat Sec. Litig.*, 684 F. Supp. 2d at 457-71.

(i)

The threshold question is whether the SPEs have standing to bring their claims. *See Friends of Gateway v. Slater*, 257 F.3d 74, 77-78 (2d Cir. 2001) ("[T]his Court must address any jurisdictional standing question first, before deciding a case on the merits."). To establish constitutional standing, a plaintiff must demonstrate: (1) injury-in-fact; (2) causation; and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

---

[1] Plaintiffs also appeal from a February 19, 2010 order making superficial changes to two pages of the February 17, 2010 opinion issued by the District Court.

2

According to defendants, the SPEs were "mere pass-through entities" or "phantoms," and therefore they did not suffer injury-in-fact when the Parmalat transaction went awry. Defendants' Br. at 23, 25. We disagree. While the SPEs may be "phantoms" of a sort, BofA apparently does not consider them so "phantom" as to relinquish its rights to the $292.4 million of debt that it contends it is owed by the SPEs. *See* Defendant's Br. at 13. As defendants know all too well, this debt is just one of the very *real* legal obligations by which the SPEs must abide. The fact that there may be other counterparties, namely Parmalat, from whom BofA and the other noteholders may potentially recover is not in any way inconsistent with the idea that the SPEs are also fully liable for the debt. *Cf.* Restatement (Second) of Torts § 879 (1979) (discussing the concept of joint and several liability).

Nor are the injuries of the SPEs' creditors identical to the SPEs' injuries or otherwise a basis to render the SPEs' injuries a nullity. *See* Defendant's Br. at 24-27. Though under some circumstances courts have held that the injury suffered by a debtor is really that of its creditors and therefore inadequate to confer standing upon the debtor, *see Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1093-94 (2d Cir. 1995); *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 90 (S.D.N.Y. 2004), we are not confronted with those circumstances here. In *Hirsch*, for example, it was undisputed that the debtor had a conflict of interest in pursuing claims for the benefit of its creditors, *see Hirsch*, 72 F.3d at 1088, 1091; here, the SPEs do not have a conflict of interest in suing BofA.

(ii)

Plaintiffs argue that BofA's representatives acted as "*de facto*" directors of the SPEs, *see* Plaintiff's Br. at 37, and therefore owed the SPEs a fiduciary duty of care, in addition to the other fiduciary duties identified by the District Court. *See In re Parmalat Sec. Litig.*, 684 F. Supp. 2d at 478 (defining the duties owed to the SPEs as "[p]erfect candor, full disclosure, [and] good faith") (internal quotation marks omitted). According to plaintiffs, BofA violated that duty of care by approving the transaction on behalf of the SPEs.

We need not reach the question of the exact scope of the duties owed to the SPEs, because even if they were owed a duty of care, the SPEs cannot prove that BofA's conduct proximately caused their injuries. *See Nordwind v. Rowland*, 584 F.3d 420, 433 (2d Cir. 2009) (explaining that a plaintiff seeking damages for breach of fiduciary duty must show that the defendant's conduct proximately caused its injuries). As the District Court explained in its well-reasoned opinion, the SPEs would have approved the transaction regardless of any additional disclosures, analysis, or deliberation about the deal. *See* 684 F. Supp. 2d at 481-83.

Indeed, the SPEs were created for one purpose, and one purpose alone: to participate in a structured transaction involving BofA, the noteholders, and Parmalat, with no "upside" potential and little "downside" risk to the SPEs. *Id.* at 458-59. The final transaction was in fact structured according to those terms—in other words, the transaction was precisely the sort of "business" for which the SPEs were designed. Moreover, at the time of the transaction, Parmalat was considered a credit-worthy corporation of substantial repute; its massive fraud was totally unknown to the parties and to the public generally. *Id.* at 468, 473. Though in hindsight the SPEs' investment in Parmalat Brazil and the related "put" options and guaranty may appear ill-advised, there is nothing in the record to suggest that the SPEs would have rejected the transaction at the time it was undertaken if BofA had indeed exercised greater care or prescient business judgment on its behalf.

3

In any event, the proximate cause of the SPEs' loss was Parmalat's collapse, not the failure of BofA to exercise its alleged fiduciary duties. As the district court found, BofA had no "real inkling that Parmalat was a financial house of cards." *Id.* at 473; *see also id.* at 483 n.188 ("I am not persuaded that BoA was negligent in this respect. After all, Parmalat fooled the entire world for more than a decade."). That finding precludes a determination that the Parmalat fraud was "a normal or foreseeable consequence of the situation created by" BofA's decision to steer plaintiffs into the transaction. *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980). Rather, it was "extraordinary under the circumstances, not foreseeable in the normal course of events, [and] independent of or far removed from" BofA's conduct. *Id.* In sum, because Parmalat's misconduct constituted "independent intervening acts which operate[d] upon but d[id] not flow from" BofA's alleged breach of duty, this is one of those cases where "only one conclusion may be drawn from the established facts and where the question of legal cause may be decided as a matter of law" in favor of BofA. *Id.* at 315.

(iii)

Finally, the SPEs contend that the District Court abused its discretion in denying them leave to amend their complaint after dismissing their claim for aiding and abetting a breach of fiduciary duty.

The SPEs requested to amend their complaint on the final page of their brief in opposition to defendants' motion to dismiss, in boilerplate language and without any explanation as to why leave to amend was warranted. *Cf. Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 275-76 (2d Cir. 2006) (holding that the District Court did not abuse its discretion in denying leave to amend where the request was made only in a footnote of plaintiff's opposition to defendants' motion to dismiss and where plaintiff provided no explanation regarding how the complaint's defects would be cured). Furthermore, at no time in the subsequent 9 months before the District Court rendered its decision on the motion to dismiss, nor in the 30 months from the time of that decision until the bench trial of September 2009, did counsel for the SPEs submit a proposed amended complaint or a motion to amend that identified and explained their position. Accordingly, although "the usual practice is to grant leave to amend [a] complaint," *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (internal quotation marks omitted), in the circumstances presented here, we cannot say that the District Court abused its discretion in declining to grant leave to amend. *See Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining "abuse of discretion").

**CONCLUSION**

To summarize:
(1) plaintiffs have standing to sue defendants;
(2) plaintiffs fail to demonstrate that BofA's conduct proximately caused their injuries;
(3) the District Court did not abuse its discretion in declining to grant plaintiffs leave to amend their complaint.

4

Upon a review of the parties' arguments on appeal, we **AFFIRM** the judgment of the District Court for the reasons stated above.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

5